[No. 13671.   Department One.   August 7, 1917.]

M. O. JAMES *et al., Appellants*, v. H. W. LUEDERS *et al.,*
*Respondents.*[1]

FRAUDS, STATUTE OF—EXECUTED CONTRACTS—VALIDITY.   Where,
pursuant to an oral agreement, decedent executed a deed in consid-
eration of care and support and a note and mortgage executed by
the grantees, and the contract was fully executed, and the papers
delivered to an attorney, with instructions to deliver the deed to
the grantees and the note and mortgage to his executors after his
death, the transaction was not void under the statute of frauds.

DEEDS—CONSIDERATION.   A deed in consideration of support is not
affected by the fact that the consideration is large and that friend-
ship entered into it.

DEEDS—DELIVERY—REVOCATION.   A deed, to be delivered after
death, is not revoked by a subsequent will, on the theory that it
was in the nature of a testamentary devise, where it was the result
of an enforcible contract.

ESTOPPEL—INCONSISTENT CLAIMS.   A claim filed against an estate
for care and support of the deceased will not defeat the claimant's
right to receive a deed, given by the deceased in consideration of
such care and support, where the claim was not filed until notice
that the beneficiaries under the will would contest the deed.

Appeal from a judgment of the superior court for Pierce
county, Chapman, J., entered March 10, 1916, in favor of
the defendants, in an action to recover possession of a deed,
tried to the court.   Reversed.

*Bates, Peer & Peterson*, for appellants.

*H. W. Lueders* and *Scott & Campbell*, for respondents.

MAIN, J.—By this action the plaintiffs sought to recover
possession of a deed to real estate.   The trial in the superior
court resulted in a judgment in favor of the defendants.   From
this judgment, the plaintiffs appeal.

The facts are substantially these:   For some years prior
to the month of October, 1913, August Thomas and wife

[1]Reported in 166 Pac. 772.

owned lots 24 and 25, in block 18, Smith and Fife's addition
to the city of Tacoma, and upon these lots had been erected
a dwelling house which the owners occupied. Sometime dur-
ing the month of October in the year mentioned, Mrs. Thomas
died. A short time thereafter, Mr. Thomas requested M. O.
James and wife, the appellants, to become tenants of his
home and take care of the same. Soon thereafter the appel-
lants moved to the property, agreeing to pay therefor a
stipulated rental. Thomas stored some of his furniture in
one room in the house, and for a few weeks after this lived
with the appellants, then went away on a trip to British
Columbia and Spokane. After returning from Spokane, he
made his home with the appellants for a period of five or six
weeks, when, owing to rapidly failing health, on the advice of
his physicians, he went to southern California. After going
to California, his health continued to fail, and during the early
part of May he concluded to return to Tacoma and make his
home with the appellants. From California to Tacoma he
was accompanied by one C. M. Strieb, a friend of many years'
standing. He said to Strieb that he desired to return to Ta-
coma in order that he might receive better care than he was
receiving in California, and that he might die in the same
house in which his wife had died. They arrived in Tacoma
on the 10th day of May, 1914, and M. O. James met them at
the depot with a taxicab. This was in accordance with a
request which he had received by wire. From the depot,
Thomas was taken to the home occupied by the appellants,
and there remained until his death, which occurred on the 15th
day of June following. His health continued to fail rapidly
and he had abandoned, apparently, all hope of recovery from
the illness from which he was then suffering.

On or about the 19th of May, he caused H. W. Lueders,
a practicing lawyer in Tacoma, who had been his attorney for
many years, to prepare a deed, note and mortgage. By the
deed, the property above described was conveyed to the ap-
pellants. The mortgage covered the same property and, to-

gether with the note in the sum of $1,000 which it secured, was executed by the appellants. The papers were executed in a room in the house occupied by the parties, the attorney being the only one, other than Thomas and the appellants, who was present. After the appellants had executed the note and mortgage, they were passed across the table, at which those present were sitting, to Thomas, who delivered the note and mortgage and the deed to Lueders, with direction that he retain the same until his (Thomas') death, and that then the deed be delivered to the appellants and the note and mortgage to the executors of his estate, at this time making the statement that, if he recovered, the papers were to be returned to the parties who had respectively executed the same. On the 25th day of May, Thomas again sent for his attorney and discussed with him the making of a will, with the result that, on the 1st day of June, a will was executed. Thomas owned a substantial amount of property other than that described in the deed and mortgage mentioned. A few days after the death of Thomas, the appellant M. O. James called upon Lueders, who was then attorney for the executors, and requested that the deed be delivered to him. He was then informed that the legatees and devisees under the will objected to the delivery of the deed and were going to wage a lawsuit for the purpose of preventing its delivery. Sometime thereafter the present action was instituted for the possession of the deed, making the custodian thereof, as well as the beneficiaries under the will, parties defendant.

The evidence in the case clearly shows that the execution of the papers above mentioned was the result of an agreement between Thomas and the appellants. The only inference that can be drawn from the testimony is that, by the terms of this agreement, the appellants were to execute the note and mortgage and deliver the same to Thomas—which they had done—and that they should take care of him until his death. The consideration for the deed was the note and mortgage and the care, including board and room, which he had received from

them prior to the time of going to California, and which he expected to receive from the time the papers were executed until his death. As already stated, he made his home with the appellants prior to the time of his going to California, taking some of his meals with them and some at hotels or restaurants in the city. In saying that the only inference fairly deducible from the testimony as to the terms of the agreement is that stated, we have not taken into consideration any testimony given by the appellants bearing upon the transaction with the deceased person. The attorney, who was the only disinterested party present at the time the papers were executed, testified that he understood the taking care of Thomas was "one of the things that induced him to make this deed." Two other witnesses gave testimony of similar import, one the friend who accompanied him from California, and the other an officer of the bank in which he kept an account. It thus appears that, while the agreement was originally oral, its effect had been embodied in the writings, and when Thomas died, it had become fully executed, because the appellants had done everything that they were required to do under the terms thereof. The transaction was not void under the statute of frauds.

The property was worth approximately $4,500, the value on that basis, after deducting the mortgage, being $3,500. This may seem a large compensation for the services rendered by the appellants, but Thomas had a right to measure the value of those services at whatever figure he saw fit. It may be, and is doubtless true, that friendship as well as the fact that Thomas died without issue, entered into the matter; but this would not defeat an agreement which had become executed by performance on one side.

The cases of *Nichols v. Opperman*, 6 Wash. 618, 34 Pac. 162, and *Brewer v. Cropp*, 10 Wash. 136, 38 Pac. 866, are distinguishable because in those cases there was neither performance nor part performance which would make the statute of frauds inapplicable.

Relative to the contention that the delivery of the deed was in the nature of a testamentary devise and therefore was revoked by the subsequent will, this may be said: While the statement of facts recites that the will was offered in evidence, neither the will itself nor a copy thereof is embodied in the record brought to this court. However, the fact that we are not advised as to the contents of the will is immaterial, because if the deed was the result of an enforcible agreement, as we have found, it would not be overcome by the execution of a subsequent will. Whether the deed and the will were so proximately connected that they would operate as one transaction and be construed together, we need not here determine.

After a most careful consideration of the record, it is plain to us that a failure to sustain the transaction and require the delivery of the deed to the appellants would be a wrong to both the dead and the living. To the dead, because it would defeat the manifest and obvious intention of the deceased. To the living, because it would deny their right to property to which they are justly entitled.

It is true that the appellants filed a claim against the estate for the care and attention which they had rendered the deceased after his return from California. This claim, however, was filed after they had been advised by the attorney for the executors that the beneficiaries under the will would contest the deed. Not knowing, of course, the result of such litigation, the appellants might, in the exercise of reason and caution, file a claim in order that, if they were defeated in the litigation over the deed, they might recover something for their trouble and expense. Under such circumstances, we think it should not be held that the filing of the claim would defeat the right to the deed.

The judgment will be reversed, and the cause remanded with direction to the superior court to enter a judgment directing the custodian of the deed to deliver the same to the appellants.

ELLIS, C. J., CHADWICK, and MORRIS, JJ., concur.